142 So.2d 391

**INDIANA LUMBERMENS MUTUAL
INSURANCE COMPANY**

v.

**Billy D. RUSSELL.**

No. 45987.

June 4, 1962.

Rehearing Denied June 29, 1962.

John A. Files, Shreveport, for relator.

Bodenheimer, Looney, Richie & Jones, G. M. Bodenheimer, Jr., Shreveport, for respondent.

Provosty, McSween, Sadler & Scott, Gravel, Sheffield & Fuhrer, Alexandria, Campbell, Campbell & Marvin, Minden, amici curiae.

McCALEB, Justice.

Indiana Lumbermens Mutual Insurance Company, having issued a family combina-

tion automobile policy to the defendant, Billy D. Russell, brought this suit to have it judicially declared that coverage under said policy extended only to a 1956 Pontiac car specially mentioned in the declarations of the insured and did not include a Ford automobile belonging to his wife, Sandra Faircloth Russell. The facts are these:

Defendant was first issued a family combination policy by plaintiff prior to his marriage. At that time he owned a 1956 Pontiac automobile. While this policy was in effect, specifically on August 21, 1958, he married Sandra Faircloth, who owned a 1957 Ford Sedan and carried public liability thereon in another company. In February, 1959, prior to the expiration date of his policy with plaintiff, defendant renewed the policy for another year with plaintiff's then agent, T. M. Huckaby. At the time of the renewal defendant, according to his testimony,[1] discussed with Mr. Huckaby the 1957 Ford owned by his wife and the fact that it was covered in a policy issued by another company. This policy was not renewed at the time of its expiration because defendant was financially unable to pay the premiums. On February 4, 1960, another renewal policy was issued by plaintiff to defendant through Oliphant Insurance Agency which had taken over the business of the Huckaby agency on January 29, 1960. This renewal policy was issued without any consultation between defendant and Oliphant. The premium was not paid thereon and the policy was finally cancelled in July of 1960. On June 28, 1960, however, while this policy was still in effect, defendant was involved in an accident while driving his wife's 1957 Ford automobile and certain third persons were injured as a result thereof. By the present action, plaintiff is seeking to escape the possibility of liability under the policy issued to defendant as its insured.

Plaintiff contends that Mrs. Russell's Ford was not covered under its policy because it was not described therein or declared by defendant in the declarations attached thereto; that no premiums were paid on the Ford and there were no entries in the premium columns of the declarations showing that a premium was payable thereon and that, therefore, coverage under the policy was limited to the Pontiac described in the declarations.

The defendant, on the other hand, is asserting that the policy in suit afforded coverage to him while using his wife's Ford because the policy provided that he and his wife were named insureds and, therefore, the Ford was an *owned* automobile as it was owned by a *named* insured. Defendant further contends that the fact that the Ford was not described in the declarations does not preclude coverage as there is nothing contained in the policy or

1. Defendant's evidence is uncontradicted. Mr. Huckaby did not appear as a witness.

declarations which limits coverage to the automobile (Pontiac) described in the declarations.

The district judge sustained defendant's position, and decreed that defendant was insured under the policy in question while driving the car of his wife. On appeal the Court of Appeal, Second Circuit, reversed the judgment holding that the Ford was a *non-owned* automobile but "* * * nor a non-owned automobile of the nature to which coverage was extended by the policy in question." See Indiana Lumbermens Mutual Insurance Company v. Russell, 135 So.2d 491. We granted certiorari.

The policy in this case is known as a Family Combination Automobile policy which was substituted for the standard form automobile policy in this State on October 1, 1956 by a directive issued by the Casualty and Surety Division of the Louisiana Insurance Rating Commission. This policy, as noted by Fire, Casualty and Surety Bulletins, National Underwriters Company and the supplement to the private passenger automobile section of the Automobile Casualty Manual for Louisiana, reprinted May 1, 1958, and as observed by the Court of Appeal, First Circuit, in Lejeune v. State Farm Mutual Automobile Insurance Company, 107 So.2d 509, extends broader coverage than that provided by the standard form policy which was in effect prior to October 1, 1956. It includes, generally, in Part I, all automobiles owned by the named insured in

the absence of a specific restriction to the contrary which, under Rule 2 of the Casualty Manual Supplement to which we have referred above, must be contained in a separate endorsement attached to the policy.

The coverage provisions applicable to this case, i. e., bodily injury liability and property damage liability, read as follows:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

A. bodily injury, * * * sustained by any person; * * * arising out of the ownership, maintenance or use of the *owned automobile* or any *non-owned* automobile, * * *".

Definitions, under Part I

"*'owned automobile'* means a private passenger, farm or utility automobile or trailer owned by the *named insured,* and includes a temporary substitute automobile; * * *".

"*'named insured'* means the individual named in Item 1 of the declarations *and also includes his spouse* if a resident of the same household; * * *". (All italics ours).

The persons insured under Part I of the policy are:

"(a) With respect to the owned automobile

(1) the named insured and any resident of the same household,

(2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured; * * *".

■■ The foregoing provisions are express and free from any ambiguity. Hence, under familiar rules of construction, they have the effect of law between the parties. Article 1945 of the Civil Code. It therefore follows from the coverage provisions and definitions of the terms used therein that Mrs. Russell was a named insured, since she was the wife of the "individual named in Item 1 of the declarations"; that her Ford automobile was an "owned automobile" because it was owned by a named insured and that the defendant, being a named insured and a resident of the same household with Mrs. Russell, was fully covered under the insuring clause of Part 1 of the policy and was included under coverages A and B. This was the view of the trial judge and we believe it to be correct.

The Court of Appeal apparently misconceived the defendant's contention herein for it stated in its opinion that the issue was "whether the defendant was a *named insured* protected against liability to third persons while driving a *non-owned* automobile." But defendant's position is, as stated, that the Ford was an *owned* automobile because it belonged to his wife who was a *named insured* under the policy.

The basic contention of plaintiff's counsel, as we understand it, is that the parties to the insurance contract did not intend to cover Mrs. Russell's Ford automobile and that this lack of intent is clearly evidenced by the declarations of defendant attached to and made part of the policy. Specific reference is made to Item 4 of the declarations, which sets forth that "Unless otherwise stated herein: (a) the total number of private passenger, farm and utility automobiles owned on the effective date of this policy does not exceed the number of such automobiles described in Item 5; * * *" and Item 5, which describes only the 1956 Pontiac automobile. In support of their argument, counsel stress Condition 17 of the policy which applies to declarations and provides:

"By acceptance of this policy, the insured named in Item 1 of the declarations agrees that the statements in the declarations are his agreements and representations; that this policy is issued in reliance upon the truth of such representations and that this policy embodies all the agreements existing between himself and the company and its agents relating to this insurance."

■ The flaw in counsel's contention, we think, is that it would require that we amend the coverage clause of the contract to conform with the representations or declarations of the insured so as to supply the true

intent of the parties. But, in the absence of fraud, we are not permitted to give this relief. For the insuring clause, being free from any ambiguity, is the law between the parties and must be enforced as written. The fact that the declaration of the insured is in conflict with the coverage clause does not, of itself, lessen the coverage given under the policy or justify modification by the Court. Nor is the policy to be voided by reason of a misrepresentation on the part of the insured for, under R.S. 22:619, subd. A, it is provided " * * * no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or avoid the contract or prevent it from attaching, *unless the misrepresentation or warranty* is made with the intent to deceive." (Italics ours).

In the case at bar, it is neither charged nor does the evidence show that the defendant made any misrepresentation to plaintiff's agent at the time he secured the policy in suit. On the contrary, defendant testified without contradiction that, upon the renewal of his policy in February of 1959, after his marriage, he informed Mr. Huckaby, the agent of the insurer at the time, of the situation with reference to the ownership by his wife of the 1957 Ford automobile. Notwithstanding this, the policy was issued without any restriction as to the coverage of *owned automobiles* to the one described in the declaration and that policy was re-placed by the renewal policy here involved on February 4, 1960 without any question as to the acquisition by defendant of other automobiles. During all this period plaintiff either had notice, or was charged with notice, of the directive which had been issued on October 1, 1956 by the Casualty and Surety Division of the Louisiana Insurance Rating Commission, which was supplemented in 1958 and which contains the same definitions concerning coverage as those set forth in the family policy. Rule 2 of the Rules applicable to Part I and Part II of this policy, as stated in the Family Coverage Supplement to the Automobile Casualty Manual for Louisiana, reads as follows:

"If all owned automobiles, as defined in this Supplement, *are not to be insured in this policy* the appropriate endorsement *must be attached."* (Italics ours).

The printed standard form referred to in Rule 2 for a Family Combination Policy entitled "Amendment of Definition of 'Owned Automobile'" which is to be endorsed and attached to the policy as part thereof provides:

"It is agreed:

"(1) That the definition of 'owned automobile' is amended to read:

" 'Owned Automobile' means

"(a) a private passenger, farm or utility automobile described in the policy. * * *"

Neither the foregoing form nor any other writing with language of similar import was provided by plaintiff in this case.

The conclusion we have reached, in line with the views of the Court of Appeal, First Circuit, in the Lejeune case, that the Family Combination Policy, by its clear and express language, provides insurance protection to the insured and members of the insured's household while using an automobile owned either by the insured named in the declaration or his spouse, is fortified not only by the directives of the Casualty and Surety Division of the Louisiana Insurance Rating Commission and the Fire Casualty and Surety Bulletins of the National Underwriters Company, but also by other provisions of the policy itself. For example, paragraph 2 of the Conditions under the heading "Premium" provides that, if the named insured acquires ownership of a private passenger, farm or utility automobile, he shall inform the company of this fact during the policy period and any premium adjustment necessary shall be made as of the date of such change or acquisition in accordance with the manuals in use by the Company. And it further provides "The named insured shall, upon request, furnish reasonable proof of the number of such automobiles and a description thereof."

Obviously, there would be no need for this provision if primary coverage extended only to the automobile described in the declarations, as contended by plaintiff insurance company.

For the reasons assigned, the judgment of the Court of Appeal is reversed and it is now ordered that the judgment of the district court be and it is reinstated and affirmed.

Plaintiff is to pay all costs.

HAWTHORNE, Justice (dissenting).

The policy here involved specifically states in Item 4 of the Declarations: "Unless otherwise stated herein: (a) the total number of private, farm and utility automobiles owned on the effective date of this policy does not exceed the number of such automobiles described in Item 5 * * *." In Item 5 only the Pontiac automobile is described. Moreover, the insured only paid a premium for the coverage of the Pontiac. The insured now takes the position that the Ford owned by his wife prior to his marriage and on the effective date of the policy is an "owned" automobile under the provisions of the policy in spite of the fact that the policy itself specifically states that only one car is owned.

As I view the matter, the intent of the parties is clearly disclosed by the terms of the policy itself; that is, only one car was insured—the Pontiac—, as it was declared to be the only car owned by the insured, and premiums were paid based on the ownership of one car, not two.

That this was the intent is shown not only by the policy but by the testimony of the defendant insured himself, who stated that from the face of the policy he was aware of the fact that only the Pontiac was described and further that he was not financially able to insure the Ford.

In my opinion this policy shows no intent whatever to insure automobiles owned by the insured on the effective date of the policy and not declared by him to be so owned. The contrary interpretation of the majority here is, to say the least, unrealistic. After considering the "owned automobile" definition, Item 4 of the Declarations, and Condition 2 regarding notice to the insurer of change of automobile ownership during the policy period and the consequent premium adjustment, I think a reasonable interpretation of the intent is that all the automobiles declared to be owned by the insured were to be insured, and the declaration as to "owned automobiles" was to pertain only to the situation as it existed on the effective date of the policy and was not to be a continuing representation. In other words, if the declaration was true as of the effective date of the policy, there was coverage for all automobiles owned by the insured during the policy period regardless of changes in ownership *during that period,* thus eliminating the old requirements for endorsement or notice to the company. Changes in ownership during the policy period would not affect coverage on owned

automobiles but would necessitate notice of such ownership change so that the proper premium adjustment could be made.

Boiled down further, all that could have been intended by these provisions of the policy was to provide automatic insurance coverage for newly acquired vehicles during the policy period.

The Rules of the Automobiles Casualty Manual for Louisiana, cited by the majority, cannot be decisive of the meaning of this contract. They are not a part of the contract of insurance, and the intent of the parties must be determined by the contract itself.