CHRIS T. BARNETTE, Judge pro tern.
This is a suit for personal injuries and damages arising out of an automobile collision. The principal question before the Court relates to interpretation of a Family 'Automobile Policy with endorsement issued to defendant Cantrelle by defendant Hardware Mutual Casualty Company, appellant. Plaintiffs and defendant Cantrelle contend that the public liability insurance policy issued by Hardware Mutual to Mr. Cantrelle, specifically describing a 1955 Dodge automobile, also extends coverage to a 1957 Chevrolet owned by Mr. Can-trelle under the broad coverage provisions of the Family Automobile Coverage Policy. The defendant-appellant Hardware Mutual contends that the endorsement excludes from the definition of “owned automobile” any automobile not specifically described *895 in the policy. The exclusion endorsement upon which the insurer relies is defective in certain aspects which gives rise to the charge of ambiguity. We must determine if the alleged ambiguities in the endorsement are serious enough to justify our disregard of the endorsement entirely, thus extending coverage to Cantrelle’s 1957 Chevrolet under the authority of Pel-State Oil Company v. Weimer, La.App., 155 So.2d 218; Indiana Lumbermens Mutual Insurance Co. v. Russell, 243 La. 189, 142 So.2d 391 and LeJeune v. State Farm Mutual Automobile Ins. Co., La.App., 107 So.2d 509.
Reginald De Shazo was an employee of A. Marx and Sons Company, Inc., and while in the course of employment driving a truck owned by his employer, was struck from the rear by a 1957 Chevrolet automobile owned by Willard Joseph Can-trelle and at the time operated by his minor son, Donald. The truck was damaged to the extent of $75.07 for recovery of which the plaintiff Marx joined in this suit. The plaintiff De Shazo sustained personal injuries for which recovery is sought. Mr. De Shazo died from natural causes not related to the alleged injuries before the case was brought to trial. His widow and a child have been substituted as parties plaintiff in his stead.
The Travelers Insurance Company petitioned as intervenor in subrogation for recovery of $900.43 as reimbursement for medical expenses paid and $87.50 for compensation benefits paid on account of its workmen’s liability responsibility to Mr. Cantrelle, the employee of its insttred, A. Marx & Sons Company, Inc.
Traders and General Insurance Company was named as defendant on account of a public liability insurance policy it had issued to Mr. Cantrelle covering the 1957 Chevrolet involved in this accident. This defendant was relieved of liability and dismissed on a summary judgment upon showing that the policy issued by it to Mr. Cantrelle covering the automobile in question contained an endorsement expressly excluding liability for damages caused by said car while operated by the insured’s-minor son, Donald. There is no appeal from this judgment.
A motion for summary judgment on. behalf of Hardware Mutual Casualty Company was denied. After trial on the merits,, judgment was rendered against defendant Cantrelle and his insurer, Hardware Mutual Casualty Company, in solido, in favor' of plaintiff Marx for $75.03 and in favor of the intervenor, Travelers Insurance Company, for $987.93 and Mrs. Mildred. Migaud, widow of Reginald De Shazo, individually, and as tutrix for Jacqueline De Shazo, minor, in the amount of $3,-600.00 for the injuries sustained by Mr. De Shazo and $250.00 for his loss of wages. From this judgment, the defendant Hardware Mutual Casualty Company has appealed. The defendant Cantrelle has answered the appeal praying that the-judgment be affirmed as it relates to the-liability of his insurer, Hardware Mutual Casualty Company.
No argument has been made in denial' of liability of Mr. Cantrelle on account of the negligent operation of his automobile by his minor son. There seems-to be no issue on this point and we find it unnecessary to discuss the details of the accident. The issue revolves around the interpretation of the liability insurance policy issued by Hardware Mutual Casualty Company, through its agent, to Mr. Cantrelle, and particularly the endorsement attached to and being a part of the policy.
Defendant Willard Joseph Cantrelle owned a 1957 Chevrolet automobile which he insured against public liability and property damage with Traders and General Insurance Company, April 3, 1960, for one year. On September 19, 1960, an “Exclusion of Named Driver” endorsement was attached relieving the insurer *896 of liability with respect to any accident while the “automobile is being operated by Daniel Cantrelle or Donald Cantrelle.” This exclusion was acknowledged by the insured, Mr. Cantrelle. It was his son, Donald, who was driving this Chevrolet automobile involved in the rear-end collision with the truck driven by plaintiff De Shazo, October 10, 1960.
Mr. Cantrelle also owned a 1955 Dodge automobile which he caused to be insured through the same agent with defendant Hardware Mutual Casualty Company in a Family Automobile Policy which specifically described in item 4 this Dodge automobile only. An endorsement, identified with the policy by the number TA 771, is attached, purporting to be an “Amendment of Definition of ‘Owned Automobile.’ ” This is the subject of our concern here.
Plaintiffs and defendant Cantrelle take the position that this endorsement is ambiguous in that it refers by title or number to specific things in the body of the policy not contained therein. It is therefore argued that it should be disregarded entirely or be construed against the insurer under the well-established principle of law that ambiguities be resolved against the insurer who wrote the provisions. Spears v. Phoenix Insurance Company, La.App., 149 So.2d 118; Binnings Equipment Co. v. Travelers Indemnity Co., La.App., 139 So.2d 551.
The plaintiffs and defendant Cantrelle rely strongly on Pel-State Oil Company v. Weimer, La.App., 155 So.2d 218; Indiana Lumbermens Mutual Insurance Co. v. Russell, 243 La. 189, 142 So.2d 391 and LeJeune v. State Farm Mutual Automobile Ins. Co., La.App., 107 So.2d 509. These cases involve the question of broad coverage of automobiles owned by the insured, under the provisions of the Family Automobile Policy even though the automobile involved in the accident was not the one specifically described in the policy. This coverage was upheld in the Indiana Lum-bermens case and Pel-State Oil Company v. Weimer, supra, notwithstanding the intention of the parties that the automobile involved in the accident not be covered.
It was held in these cases that the coverage under the definition of “owned automobile” included all automobiles owned by the insured unless expressly excluded by an appropriate endorsement. There was no such endorsement in either of the above-mentioned cases. In the case before us, there is an endorsement attached to and made a part of the policy at the time of its issuance apparently intended to meet the requirement of the cited cases. A close examination of that endorsement is now required.
The policy in question is a “Family Automobile Policy.” This form of policy has been substituted by all companies for the standard form automobile policy as required by directive of the Casualty and Surety Division of the Louisiana Insurance Rating Commission. It extends broader coverage than that provided by the standard form policy in effect before the effective date of the directive. The directive referred to was discussed at some length by the Supreme Court of Louisiana in Indiana Lumbermens Mutual Insurance Co. v. Russell, supra. The Court there said:
“ * * * It [the directive] includes, generally, in Part I, all automobiles owned by the named insured in the absence of a specific restriction to the contrary which, under Rule 2 of the Casualty Manual Supplement to which we have referred above, must be contained in a separate endorsement attached to the policy.
* * * * * *
“Definitions, under Part I
“ ‘ “owned automobile” means a private passenger, farm or utility auto *897 mobile or trailer owned by the named insured, and includes a temporary substitute automobile; * * *
* * * * * *
“ * * * Rule 2 of the Rules applicable to Part I and Part II of this policy, as stated in the Family Coverage Supplement to the Automobile Casualty Manual for Louisiana, reads as follows:
“ ‘If all owned automobiles, as defined in this Supplement, are not to be insured in this policy the appropriate endorsement must be attached.’ (Italics ours).
“The printed standard form referred to in Rule 2 for a Family Combination Policy entitled ‘Amendment of Definition of “Owned Automobile” ’ which is to be endorsed and attached to the policy as part thereof provides:
“ ‘It is agreed:
“ ‘(1) That the definition of “owned automobile” is amended to read:
“ ‘ “Owned Automobile” means
“‘(a) a private passenger, farm or utility automobile described in the policy. * * * ’ ”
The Court concluded that since, “Neither the foregoing form nor any other writing with language of similar import was provided * * * ” the car in question was not excluded and therefore covered.
In the instant case there is an endorsement in language almost verbatim that quoted above, which would take this case out of the authority of Indiana Lumber-mens and the other cases cited, unless it be because of the defects we now point out.
The body of the endorsement appears to be a mimeographed, or otherwise multi-copied, reproduction of the typewritten amendment in the space provided on a printed stock form prepared by the insurer for attachment to its policies. The pertinent portions of the endorsement are as follows:
• “AMENDMENT OF DEFINITION OF ‘OWNED AUTOMOBILE’
“IT IS AGREED:
“1. THAT THE DEFINITION OF ‘OWNED AUTOMOBILE’ IN THE FAMILY AUTOMOBILE COVERAGE ENDORSEMENT IS AMENDED TO READ: (Italics ours)
“ ‘OWNED AUTOMOBILES’ MEANS
“(A) A PRIVATE PASSENGER FARM OR UTILITY AUTOMOBILE DESCRIBED IN THE POLICY
* * * * * *
“2. PARAGRAPH 11 8 OF THE FAMILY AUTOMOBILE COVERAGE ENDORSEMENT IS AMENDED ACCORDINGLY.” (Italics ours)
The endorsement is identified with the policy by the number TA 771.
Except for the part which we have italicized above, the endorsement appears to be in proper form. The reference to “the family automobile coverage endorsement” is ambiguous since there is no family automobile coverage endorsement attached to the policy. Neither is there a paragraph 11 8. The policy is itself a “Family Automobile Policy” prepared on a printed form designed for such purpose. It needs no endorsement to convert it to a family automobile coverage policy. Because of these discrepancies, plaintiffs and defendant Cantrelle argue that the endorsement is ambiguous and too indefinite to have meaning and should be disregarded and all doubt resolved against the insurer.
It is pertinent to point out that in the body of the printed form used by the agent in preparing the policy, there is a standard *898 form endorsement, in almost identical language to that recommended by the Supreme Court in the Indiana-Russell case, supra, and used in the attached endorsement, which is free of ambiguity. This could so easily have been used by simply checking the appropriate square in item 6. Had this been done there probably would be no question of the exclusion of all automobiles except the 1955 Dodge described in item 4. Apparently the agent used a stock form of endorsement prepared for general use with other printed policy forms when he might have used instead the endorsement printed into the body of the policy itself. It might have been (though we doubt it) the intention of the agent to comply literally with the directive in Rule 2, referred to above by the Supreme Court in the following language, [the restriction] “must be contained in a separate endorsement attached to the policy.” (Italics ours). This is sheer assumption on our part since no explanation has been given. We do not think such a literal interpretation of the Supreme Court’s language is reasonable or was intended by that Court. '
The question we must decide therefore is whether the ambiguity or uncertainty of the endorsement obscures the intent of the parties. We are not unmindful that in Indiana Lumbermens Mutual Insurance Co. v. Russell, supra, the Supreme Court, and in Pel-State v. Weimer, supra, the Court of Appeal (Second Circuit), held that even though there was a clear intent to insure only the one described automobile, the other was covered also in the absence of an appropriate endorsement of exclusion. Here we have a somewhat different question of intent. It is obvious that the parties intended to limit the policy to the automobile “described in the policy”, namely, a 1955 Dodge described in item 4 of the printed form.
In the Indiana-Russell case, in a dissenting opinion, Justice Hawthorne said, “the intent of the parties is clearly disclosed by the terms of the policy itself; * * * ” and cited item 4 which is identical to item 6 in the policy before us. However, the majority opinion held, in spite of intent, that without the endorsement of exclusion, an automobile not specifically described, but owned by insured’s spouse, was an “owned automobile” within the terms of the policy and included within the broad coverage of the Family Automobile Policy. In this case there is an endorsement in substantially the language approved by the Supreme Court, the absence of which, as above pointed out in the Indiana-Russell case, was the basis of the majority opinion. It appears that the insurer in this case has met the requirement set out by the Supreme Court in that case.
On the subject of intention of the parties in insurance contracts, there are numerous pertinent cases which could be cited. The rule of law that ambiguities in the policy must be construed in favor of the insured and against the insurer who wrote the ambiguous provisions, has been followed consistently in appropriate factual situations by the courts of this state. Spears v. Phoenix Insurance Company, La.App., 149 So.2d 118; Binnings Equipment Co. v. Travelers Indemnity Co., La.App., 139 So.2d 551; King v. Mason, 234 La. 299, 99 So.2d 117; Albritton v. Fireman’s Fund Ins. Co., 224 La. 522, 70 So.2d 111; Finley v. Massachusetts Mut. Life Ins. Co., 172 La. 477, 134 So. 399, (citing other cases).
This, however, is not an absolute rule. Other cases have held that the intention of the parties is of paramount importance, and if that intent can be determined from a reading of the policy, giving due consideration to practical, reasonable and fair interpretation of the language used, effect should be given to that intent. Floyd v. Pilot Life Insurance Company, La.App., 135 So.2d 546; Hardee v. Southern Farm Bureau Casualty Ins. Co., La.App., 127 So.2d 220; Jones v. Standard Life and *899 Accident Insurance Co., La.App., 115 So.2d 630; McKinney v. American Security Life Insurance Co., La.App., 76 So.2d 630, (citing other cases); Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72, 125 A.L.R. 1075.
It is true that the endorsement attached to the policy before us does not fit the printed form to which it is attached in every detail, and there are some impossible and wholly meaningless references in it to items not found in the policy. Notwithstanding these discrepancies, however, we are of the opinion that it was clearly the intention of the parties to attach an endorsement in the language of the standard form, to meet the requirement of the Supreme Court expressed in Indiana Lumbermens Mutual Insurance Co. v. Russell, supra.
The testimony of the witnesses as to their intent to include Mr. Cantrelle’s Chevrolet or limit coverage to his Dodge automobile is by no means conclusive. The contract of insurance is the law between the parties and we must look to it to determine their intent. If that intent is expressed in language sufficiently clear and unmistakable as to leave no reasonable doubt, effect must be given to it. It is our opinion that the endorsement leaves no reasonable doubt that the parties intended to restrict coverage to the insured’s Dodge automobile. His Chevrolet automobile involved in the accident before us was not covered and the insurer, Hardware Mutual Casualty Company, is not liable.
As above stated, there appears to be no issue of proximate cause of the accident and the negligence of defendant Cantrelle’s minor son is virtually conceded. The liability of Mr. Cantrelle is so obvious that it requires no further discussion. This brings us to the question of quantum.
Mr. De Shazo was not seriously injured. His injury might be described as a moderate back injury, more particularly a lum-bosacral sprain. After five days in the hospital for observation and to rule out the possibility of other and more serious injuries, he was discharged to return to work when he felt like doing so. He returned to work as a yard superintendent in a scrap iron business after about two and a half weeks. He maintained contacts with his doctor for physiotherapy, consisting of diathermy treatment principally, for something over two months.
We have no doubt that Mr. De Shazo experienced considerable pain and discomfort in the performance of his duties. He had been an active participant in sports and did many domestic chores requiring physical exercise. The doctor testified that a continuance of them would have therapeutic value, but he found them to be painful and had to curtail them considerably.
Further examination six months after the injury revealed no new symptoms. There was nothing objective, but the doctor did feel that the subjective symptoms were valid and had no suspicion of malingering. He was finally discharged approximately eight months after the accident. He died from natural causes unrelated to the- accidental injuries, April 5, 1963, two and a half years after the accident. The award of $3,600.00 for pain and suffering occasioned by the relatively moderate injuries sustained, we think, was excessive.
The record does not disclose much information about the means of defendant Cantrelle, but we think there is enough to support our opinion that he is a wage earner, a family man with all the obligations such involves, and with limited resources. These are factors which the trial court apparently did not take into consideration in awarding damages. There is abundant authority in our jurisprudence that ability of the defendant to pay should be recognized and taken into account in awarding damages, but should not be taken *900 to the extreme. Leon v. Jackson, La.App., 122 So.2d 102; Lacaze v. Horton, La.App., 100 So.2d 252; and numerous cases there cited.
For these reasons we believe that the ends of justice will be more nearly accomplished by reducing- the award of damages for pain and suffering from $3,-600.00 to $2,000.00.
In arriving at these conclusions, we have not been unmindful of the recent decision of the Supreme Court of Louisiana in Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149. We do not think we have violated the rationale of that case but, on the contrary, have rendered judgment consistent therewith.
The judgment appealed from is therefore reversed insofar as it applies against Hardware Mutual Casualty Company and judgment is now rendered in favor of Hardware Mutual Casualty Company rejecting the demands of the plaintiffs and the in-tervenor, Travelers Insurance Company. The judgment in favor of Mrs. Mildred Migaud, widow of Reginald De Shazo, individually, and as tutrix for Jacqueline De Shazo, is amended by reducing the item of award for injuries from $3,600.00 to $2,000.00. In all other respects the judgment is affirmed. The defendant Willard Joseph Cantrelle is cast for all costs of court.
Reversed in part; amended and affirmed.